

The Law Offices of Jacob Aronauer
250 Broadway, Suite 600
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

October 18, 2023

<u>Via ECF</u>
Hon. Taryn A. Kerkl
United States District Court Eastern District of New York

  Re: *Lopez v. Martha's Cocina Mexican, LLC et al.*
    23-cv-02053 (LDH) (TAM)

Your Honor:

  This office represents Plaintiff Luis Lopez ("Lopez" or "Plaintiff"). This serves in response to the Court's request for a supplemental submission responding to questions raised by the Court at the default judgment hearing.

## 1. Supplemental Briefing or Authority on the Question of Plaintiff's Standing as to the Wage Notice/Statement Claims

  For the reasons set forth we believe that Plaintiff has standing to bring wage notice/statement claims under The Wage Theft Prevention Act ("WTPA").

  Courts have previously held the deprivation of wage statements "entails a significant risk of harm to the employees' concrete interest in being properly paid." *Imbarrato v. Banta Mgmt. Servs. Inc.*, 18-cv-5422 (NSR), 2020 U.S. Dist. LEXIS 49740, at * 8-9 (S.D.N.Y. Mar. 20, 2020); *see also Hicks v. T.L. Cannon Mgmt. Corp.*, 2018 U.S. Dist. LEXIS 246171, at * 5 (W.D.N.Y. Mar. 13, 2018); *see, e.g., Black v. 7714 Ent., Corp.*, No. 21 CV 4829, 2022 U.S. Dist. LEXIS 152302, 2022 WL 3643969, at *2 (E.D.N.Y. Aug. 24, 2022); *Brito v. Marina's Bakery Corp.*, No. 19 CV 828, 2022 U.S. Dist. LEXIS 53351, 2022 WL 875099, at *20 (E.D.N.Y. Mar. 24, 2022); *Santos v. Cancun and Cancun Corp.*, No. 21 CV 192, 2022 WL 1003812, at *7-8 (E.D.N.Y. Feb. 17, 2022); *Lamar v. A&O Bros. Corp.*, No. 21 CV 169, 2022 U.S. Dist. LEXIS 19268, 2022 WL 1422439, at *9 (E.D.N.Y. Feb. 2, 2022); *Williams v. Miracle Mile Props. 2 LLC*, No. 20 CV 3127, 2022 U.S. Dist. LEXIS 19826, 2022 WL 1003854, at *10 (E.D.N.Y. Feb. 1, 2022).3

  I am aware of Your Honor's prior holdings on this issue and its reliance on *TransUnion LLC v Ramirez*, 141 S. Ct. 2190 (2021). Specifically, I am aware that the Court has held that under *TransUnion*, employees do not have Article III standing to bring NYLL notice violation claims. *Veintimilla v. NY*, 2023 U.S. Dist. LEXIS 28799, at * 24-

24 (E.D.N.Y. Feb. 17, 2023) (holding that because *TransUnion* only plaintiffs who have suffered a clear concrete injury stemming from a statutory violation may sue that defendant in federal court).

Respectfully, the Supreme Court's more recent decision in *303 Creative v. Elenis*, 143 U.S. 2298, 2308 (2023) "appears to lower the bar for plaintiffs to establish Article III standing." *Jian Lin v. Bund Dumpling House, Inc.*, 2023 U.S.Dist. LEXIS 172191 at * 20 (E.D.N.Y. Sept. 26, 2023) ("contradicting TransUnion's 'actual and concrete injury' standard' and announcing a new, looser 'credible threat' requirement).

The reasoning applied by Judge Levy in *Jian Lin* should be adopted by this Court. Furthermore, as noted by Judge Levy, there are factual distinctions between cases like *TransUnion* and *Maddox* and cases brought under the WTPA. Id. at 18-19 (noting that in TransUnion only a minimal amount of class members actually suffered harm and in *Maddox* the plaintiffs failed to plead sufficient facts that they were harmed).

 Specifically,

the wage statement and notice violations alleged here are of a different class of harm from those alleged in <u>TransUnion</u> and <u>Maddox</u>. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." <u>Bueno</u>, 2023 WL 2387113, at *3 (quoting <u>Imbarrato v. Banta Mgmt. Servs. Inc.</u>, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned. <u>Bueno</u>, 2023 WL 2387113, at *3. Indeed, if an employer's failure to provide wage statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable.

*Jian Lin.*, 2023 US Dist. LEXIS 172191, at *20.

A wage hire statement sets forth what an employee is supposed to be paid per hour as well as the correct overtime rate. By not informing Plaintiff what he should have paid under the law enabled Defendants to circumvent their obligations. This in turn caused Plaintiff actual damages. Likewise, the purpose behind an accurate wage statement ensures an employee is aware that they are being paid in compliance with the law. By failing to provide an employee with an accurate wage statement enables an employer to keep an employee 'in the dark'. An employee in the dark when paid does not know that their rights are being violated. This leads to wage theft. A wage hire notice and a wage statement go hand in hand with ensuring an employee is paid correctly.

Obviously, the NY state legislature believes that an employee can be harmed—it is for that reason they put in the WTPA held that an employee can recover for each workday that they do not receive the correct wage notice and wage statements.

It is clear that the WTPA was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL. The [*23] statute explicitly recognizes that this interest is put at risk when employees are "mis- or un-informed regarding their rights and the responsibilities of their employers," and seeks to guard against that harm by requiring employers to regularly apprise their employees of such information as the rate and basis for their wages and any allowances claimed by the employer.

*Imbarrato v Banta Mgt. Servs.*, 2020 US Dist. LEXIS 49740, at *22-23 (S.D.N.Y. Mar. 20, 2020).

Finally, with the upmost respect, it is submitted that the Court should adhere to Second Circuit precedent and not make arguments for the defaulting party. *See Taylor v. 312 Grand St. LLC,* 2016 U.S. Dist. LEXIS 36623, at * 9 (E.D.N.Y. Mar. 22, 2016) *citing Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 120 (2d Cir. 2015) (observing that a court should not act as a defaulting party's lawyer and that "[t]he magistrate in the case essentially took it upon himself to act as counsel for parties who had not bothered themselves to appear in court.").

Here, admittedly there is a split in the Second Circuit as to whether an employee has standing under Article III to bring causes of action under the WTPA. It is respectfully submitted that Defendants gave up the right to argue a lack of Article III standing when they elected to default in this action (the Court gave Defendants multiple opportunities to retain counsel).

### 2.   How to Calculate Plaintiff's Regular Rate of Pay

The Court has asked for clarification as to the correct method to calculate Plaintiff's regular rate of pay. Again, respectfully, it is urged that the Court should not make arguments for the defaulting party. *Greathouse*, 784 F.3d at 120. As discussed in Plaintiff's memorandum of law in support of damages, we take the position that the correct way to calculate Plaintiff's damages is to divide his weekly salary by 40 hours.

Since Plaintiff worked as a restaurant worker, Plaintiff is deemed to have worked in the hospitality industry. *Rowe v. CC Rest. & Bakery, Inc.*, 2019 U.S. Dist. LEXIS 139301, at * 19 (E.D.N.Y. Aug. 15, 2019) (finding that because the plaintiff worked in a restaurant he worked in the hospitality industry). Accordingly, the proper way to calculate Plaintiff's damages is to divide his weekly salary by 40, based purely on the fact that Plaintiff alleged for his entire employment more than 40 hours a week. Id. (the court determined the plaintiff's hourly rate by dividing his weekly salary because 40 is less than the hours plaintiff claimed that he worked).

### 3.  Further Documentation with Respect to service on the Secretary of State

Annexed please find proof that the invoice for service through the Secretary of State

was $65.00.

## 4. **Hourly Rate**

In the original application for attorney fees, I provided the Court with my background and experience.

My law firm was recently retained to defend a small business in a FLSA lawsuit in the EDNY. For that matter my hourly rate is $450 an hour and my paralegals rate is $150. The redacted retainer is annexed. Accordingly, I maintain my request for an hourly rate of $450 an hour but lower the requested rate for $150 an hour for paralegals. As noted in our earlier submission, to the extent possible I try to use paralegals instead of myself to do first drafts. This helps keep the legal fees to a minimum.

Please note that additional work has been performed. A complete invoice is annexed (not inclusive of work performed on this supplemental submission).

In weighing whether my hourly rate is reasonable I ask that the Court take into consideration that the overall legal fees are only $2,770.50. I think the Court would be hard-pressed to find a lower amount of legal fees sought after the submission of a default judgment application.

## 5. **Disparity between the Complaint and Plaintiff's Damages' Chart**

We have reviewed the Court's findings and one of the time periods for Plaintiff worked for Defendants was incorrectly listed. We apologize for the sloppy error. As this mistake is not acceptable, I would not charge a client for fixing this error. Accordingly, we do not seek additional legal fees for providing the Court with this supplemental submission.

### **November 2, 2022 through January 8, 2023**

We reviewed paragraph 22 of the filed complaint along with paragraph 13 of Lopez's declaration. We have corrected the spreadsheet to reflect that for this time period Lopez worked 47 hours per week instead of 52 hours per week.

### **November 28, 2022 through January 8, 2023.**

Upon a review of paragraph 26 of the complaint and Lopez's declaration at paragraph 16, we believe both are consistent for this period. Based on the complaint and Lopez's declaration, Lopez's schedule was as follows: On Wednesday and Thursday Plaintiff worked from 3:00 p.m. to 11:00 p.m. on Friday from 9:00 a.m. to 6:00 p.m. and on Saturdays and Sundays from 10:00 a.m. to 8:00 p.m. We believe that this time frame reflects a 45-hour workweek—not 35 hours.

**Conclusion**

We appreciate the Court's attention to Plaintiff's default judgment and the opportunity it provided us to provide the supplemental submission.

Respectfully submitted,

*/s Jacob Aronauer*
Jacob Aronauer
*Attorney for Plaintiff*

cc: **Via Federal Express**
*All named Defendants*