UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
LUIS G. LOPEZ,

                       Plaintiff,

        -against-

MARTHA'S COCINA MEXICANA, LLC,
d/b/a MARTHA'S COCINA
MEXICANA and FRANCISCO SIMON,

                       Defendants.
-----------------------------------------------------------X

                               **REPORT AND
                               RECOMMENDATION**
                               23-CV-2053 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Luis Lopez commenced this action against Defendants Martha's Cocina

Mexicana, LLC, d/b/a Martha's Cocina ("Corporate Defendant"), and Francisco Simon

on March 16, 2023. (Compl., ECF No. 1.) Plaintiff alleges various claims, including

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New

York Labor Law ("NYLL"), Article 6 Section 190 *et seq*.

      On May 24, 2023, the Clerk of Court certified Defendants' default pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiff subsequently moved for

default judgment on June 29, 2023. (Clerk's Entry of Default, ECF Nos. 15, 16; Mot. for

Default J., ECF No. 18.) For the reasons set forth below, this Court recommends that

Plaintiff's motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff alleges that Defendants employed him as cook from May 2022 through

January 2023. (Compl., ECF No. 1, ¶ 8.) During this period, he regularly worked five or

six days per week and in excess of 40 hours per week. (*Id.* ¶¶ 21–22, 25–26.) Plaintiff

alleges that he was paid a flat weekly rate of $800 from May 30, 2022, to November 27,

2022, when he was working 47 hours per week; and that he was paid a flat weekly rate

of $600 from November 28, 2022, to January 8, 2023, when he was working 45 hours per week. (*Id.* ¶¶ 22–23, 26–27.) Plaintiff further alleges that, although he worked more than 40 hours per week, his wages only covered the first 40 hours worked. (*Id.* ¶¶ 24, 28.)

According to the complaint, Corporate Defendant was an enterprise engaged in interstate commerce. (*Id.* ¶¶ 15, 16.) Plaintiff alleges that Defendant Francisco Simon is the owner, principal, and manager of Corporate Defendant. (*Id.* ¶ 10.)

Plaintiff asserts claims against Defendants for willfully violating the overtime pay provisions of the FLSA and NYLL,[1] (*id.* ¶¶ 41, 48); for failure to pay minimum wage, in violation of the FLSA and NYLL,[2] (*id.* ¶¶ 54, 58); and for violating the New York Wage Theft Prevention Act, NYLL Sections 195-1 and 195-3, by failing to provide proper notice of pay and wage statements, (*id.* ¶¶ 63–69).

Service was made on Corporate Defendant by serving the New York Secretary of State on April 10, 2023. (*See* Aff. of Service, ECF No. 8.) Service of the summons and complaint upon Defendant Francisco Simon was effected by in-person service on a

---

[1] Plaintiff notes that he "incorrectly sought damages for unpaid overtime under NYLL" because all "damages for unpaid overtime should have only [been] brought under the FLSA." (Pl.'s Mem. of Law, ECF No. 19, at 1.) However, the Court may award damages under whichever statute provides for the highest recovery. *See Drozd v. Vlaval Const., Inc.*, No. 09-CV-5122 (SJ) (CLP), 2012 WL 4815639, at *2 (E.D.N.Y. Oct. 10, 2012). Accordingly, as discussed further below, claims for unpaid overtime will be considered under the NYLL, together with prejudgment interest and a statutory penalty only available under the NYLL, as discussed *infra* note 13.

[2] While the complaint includes causes of action for failure to pay minimum wage, (Compl., ECF No. 1, ¶¶ 54, 58), minimum wage violations are not discussed in Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, (Pl.'s Mem. of Law, ECF No. 19), and are not supported by the Court's independent calculation of damages, *infra*. Accordingly, the Court deems that these claims have been abandoned. *Cf. Donohue v. Marsh*, No. 19-CV-207 (RPK) (RML), 2022 WL 4111025, at *8 (E.D.N.Y. Sept. 8, 2022) ("Plaintiff's acknowledgement of all his claims, his specification of the four valid claims, and his defense of those fo[u]r claims alone are sufficient to permit 'a court [to] . . . infer' that the remaining claims have been abandoned." (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

person identified as a coworker of the Defendant, at the location of the Corporate Defendant's restaurant, at 338 Franklin Ave., Brooklyn, NY 11238, on April 19, 2023, and by mail to the same address, on April 19, 2023. (*See* Aff. of Service, ECF No. 9; *see also* Compl., ECF No. 1, ¶ 14 (specifying business address of Corporate Defendant as 338 Franklin Ave., Brooklyn, NY 11238).) On June 29, 2023, Plaintiff filed the motion for default judgment and accompanying documents. (Mot. for Default J., ECF No. 18; Pl.'s Mem. of Law, ECF No. 19; Aff./Decl. in Supp. of Mot. for Default J., ECF Nos. 20, 21.) On July 13, 2023, Plaintiff certified that the default motion paperwork was sent to Defendants by mail. (Aff. of Service of Mot. for Default J., ECF No. 24.) On July 31, 2023, this Court issued notice of a hearing on the default motion and directed that the notice be sent to four addresses associated with Defendants, together with a full copy of the docket sheet. (July 31, 2023 ECF Scheduling Order, ECF No. 25.) On September 13, 2023, an employee of Corporate Defendant appeared for the hearing on the default motion, which employee represented that Defendants were working on obtaining counsel. (*See* Sept. 13, 2023 ECF Min. Entry & Order.) Defendants were ordered to have an attorney file a notice of appearance by September 26, 2023, which deadline was later extended to October 6, 2023. (*See id.*; Sept. 27, 2023 ECF Order.) To date, no attorney has appeared for Defendants.

On September 27, 2023, after counsel failed to appear as directed, the Court ordered Plaintiffs' counsel to file a supplemental submission "responding to the questions posed by the Court at the default motion hearing." (Sept. 27, 2023 ECF Order.) Counsel filed a supplemental submission on October 18, 2023. (2d Mot. for Default J., ECF No. 31 (hereinafter "Suppl. Submission").) On October 23, 2023, Plaintiff filed an affidavit confirming mailing of the supplemental submission to Defendants. (Aff. of Service of Suppl. Submission, ECF No. 32.)

**DISCUSSION**

## I. Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's]

---

[3] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Req. for Certificate of Default, ECF Nos. 11, 13); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (*see* Affs. of Service, ECF Nos. 8, 9; Aff. in Supp. of Default J., ECF No. 21, ¶ 3–11); and (3) certified the mailing of the motion papers to Defendant Simon at his last known address and the business address of the Corporate Defendant at its business address, in accordance with Local Rule 55.2(c), (*see* Aff. of Service, ECF No. 24).

favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant[s'] liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Specific to FLSA cases, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also*

*Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002); *Zhao v. East Harlem Laundromat, Inc.*, No. 07-CV-201, 2010 WL 4628294, at *6 (S.D.N.Y. Oct. 8, 2010). Here, Plaintiff seeks compensatory damages, liquidated damages, statutory penalties, pre- and post-judgment interest, injunctive relief, and an award of attorneys' fees and costs. (*See* Compl., ECF No. 1, at pp. 10–11.) For the following reasons, the Court recommends entry of a default judgment in Plaintiff's favor and an award of damages and interest, as detailed below.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v.*

*Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. Plaintiff adequately served Corporate Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (Aff. of Service, ECF No. 8); *see* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Jean-Louis v. Warfield*, 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Plaintiff also adequately served Defendant Simon by in-person service on a person identified as a coworker, at the location of the Corporate Defendant's restaurant, at 338 Franklin Ave., Brooklyn, NY 11238, on April 20, 2022, and by mail to the business address, on April 19, 2023. (Aff. of Service, ECF No. 9); *see* N.Y. C.P.L.R. § 308(2) (allowing service "to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons to the person to be served . . . at [their] actual place of business").

Defendants failed to answer within 21 days of service. (*See* Aff. of Service, ECF No. 8.) Defendants likewise failed to respond after Plaintiffs moved for default judgment and after receiving notice of the motion both from Plaintiffs and the Clerk of Court. (*See* Aff. of Service, ECF No. 24; July 31, 2023 Scheduling Order.) In light of Defendants' failure to respond, despite being provided notice at least three times of this proceeding, the Court weighs this factor in favor of default.

## B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

## C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

## III. Liability and Damages

### A. FLSA Liability

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018).

#### 1. *Employers Subject to the FLSA*

An employer is subject to both the minimum wage and overtime provisions of the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the Court finds that Plaintiff has adequately alleged that Corporate Defendant is an "[e]nterprise engaged in commerce" and therefore subject to the FLSA. 29 U.S.C. § 203(s). Plaintiff alleges that Corporate Defendant is a restaurant and

employed him as a cook and that Corporate Defendant had "employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." (Compl., ECF No. 1, ¶ 16.) Plaintiff further alleges that Corporate Defendant had "annual gross volume of sales made or business done of over $500,000." (*Id.*)

Although Plaintiff's allegations are largely conclusory, courts have noted that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quotation marks omitted); *see also Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009). In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie*, 997 F. Supp. at 530. Here, the Court may safely infer that such goods and materials were used in the operation of Defendant's restaurant business, Martha's Cocina Mexicana. (*See* Compl., ECF No. 1, ¶ 14); *Romanowicz*, 577 F.3d at 84 ("In light of [a defendant's] default, a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor . . . ."); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding that employer was engaged in interstate commerce where it was "simply inconceivable that none of the [goods] used" in its business "originated outside of New York").

Given the nature of Corporate Defendant's business, it is reasonable to infer that the materials used in operating a restaurant were not exclusively sourced in New York. Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendant is subject to the FLSA.

With respect to Defendant Simon, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018) (citation omitted). Here, Plaintiff alleges that Defendant Simon had the "power and authority to hire and fire employees, control employee work schedules, set employee wage rates, and maintain employee pay records." (Compl., ECF No. 1, ¶ 12.) Taking these allegations as true in the context of this default, the Court finds that Defendant Simon was an employer subject to the FLSA. *See, e.g.*, *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

2. *Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment,' sufficient to support a finding of employee status . . . ." *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013)).

Here, Plaintiff alleges that he "was employed as a cook at Martha's Cocina Mexicana" in Brooklyn. (Compl., ECF No. 1, ¶ 8.) "It follows, therefore, that for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]'" (alterations in original) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 192–93 (S.D.N.Y. 2009))).

3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiff alleges that Defendants employed him as a cook — a class of employment not contemplated by any of the statutory exemptions. (Compl., ECF No. 1, ¶ 8.) *See* 29 U.S.C. § 213(a). For the purposes of this default motion, Plaintiff has therefore adequately alleged facts establishing applicability of the FLSA, as a predicate to his claims under that statute.

**B. Liability Under the NYLL**

To recover under the NYLL, Plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (alteration in original) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds*,

811 F.3d 528 (2d Cir. 2016); *see Ethelberth*, 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Having already found that Plaintiff has sufficiently pled that Defendants were employers and that Plaintiff was an employee under the FLSA, the Court finds that Plaintiff has also adequately alleged an employee relationship with Defendants under the NYLL.

## C. Violations of the FLSA and the NYLL

Having determined Defendants' liability, the Court must now decide whether Plaintiff is entitled to a default judgment and damages. As a preliminary matter, the Court notes that Plaintiff's claims fall within the relevant statutes of limitation.[4] *See* 29 U.S.C. § 255(a) (two years for ordinary FLSA violations); NYLL § 198(3) (six years).

### 1. *Overtime Violation*

Plaintiff alleges that Defendants violated the FLSA by failing to pay him overtime wages for hours worked in excess of 40 hours per week. (*See* Compl., ECF No. 1, ¶¶ 40–44.) Accepting Plaintiff's factual allegations as true, the Court recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and the NYLL.

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked

---

[4] The Court notes that Plaintiff alleges "*willful* violation[s] of the FLSA" by Defendants. (Compl., ECF No. 1, ¶¶ 41–44, 58–61.) Willful FLSA claims present a higher pleading burden than ordinary FLSA claims but allow plaintiffs to take advantage of a three-year statute of limitations. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320–25 (2d Cir. 2021) (discussing 29 U.S.C. § 255). As stated above, Plaintiff filed his claims within the two-year statute of limitations for ordinary FLSA claims. The Court therefore need not assess whether Plaintiff has adequately established willfulness "as an independent element of [his] claims." *Id.* at 322.

in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . the [FLSA]."). Accordingly, to establish liability under the FLSA for an unpaid overtime claim, the "plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Plaintiffs must also show "that the[ir] employer had actual or constructive knowledge" of their overtime hours. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

The FLSA and NYLL differ somewhat in their approaches to calculating the regular rate of pay.[5] Under the FLSA, the regular rate of pay "'is determined by dividing [the employee's] total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" *Rosa v. La Oficina of Queens, Inc.*, No. 18-CV-06915 (FB) (PK), 2023 WL 2745214, at *8 (E.D.N.Y. Mar. 17, 2023), *report and recommendation adopted*, 2023 WL 2736237 (E.D.N.Y. Mar. 31, 2023) (quoting 29 C.F.R. § 778.109). The NYLL, however, sets forth a specific method to calculate the regular rate of pay for workers in the

---

[5] On September 27, 2023, the Court directed Plaintiff to file a supplemental submission addressing the calculation of Plaintiff's regular rate of pay. (Sept. 27, 2023 ECF Order.) In response, Plaintiff suggested that the Court should "not make arguments for the defaulting party." (Suppl. Submission, ECF No. 31, at 3.) Plaintiff's assertion fails to recognize, however, the well settled rule that in a default setting, the "'allegations in the complaint with respect to the amount of damages are not deemed true,'" and "courts have an 'obligation to ensure that damages [a]re appropriate.'" *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 151 (E.D.N.Y. June 20, 2013) (alteration in original) (first quoting *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); then quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

hospitality industry — including restaurant workers — under the Hospitality Industry Wage Order. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.1(a). For such workers, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146-3.5(b). "[W]here both the FLSA and [NYLL] provide for recovery, it is appropriate for the Court to award the maximum recovery available for each violation." *Drozd*, 2012 WL 4815639, at *2. Accordingly, the claim for unpaid overtime will be considered under the NYLL's Hospitality Industry Wage Order.

Because Plaintiff is a restaurant worker, the Hospitality Industry Wage Order applies. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.1(a); *Elvey v. Silver's Crust West Indian Rest. & Grill, Inc.*, No. 18-CV-126 (FB) (VMS), 2019 WL 3937126, at *2, 8 (E.D.N.Y. July 3, 2019) (applying the Hospitality Industry Wage Order overtime provisions to a chef plaintiff). Plaintiff alleges that his weekly hours were greater than 40 for his entire period of employment, (Compl., ECF No. 1, ¶¶ 22, 26), and thus his regular rate of pay should be calculated by dividing his weekly earnings by 40 hours. *Cf. Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sep. 13, 2019) (dividing weekly salary by 40 where 40 is less than the number of hours actually worked). Plaintiff alleges that Defendants paid him a flat rate of $800 per week from on or around May 30, 2022, to on or around November 27, 2022 ("Period 1"), and $600 per week from on or around November 28, 2022, to on or around January 8, 2023 ("Period 2"). (Compl., ECF No. 1, ¶¶ 21–23, 25–27.) Thus, his regular rate of pay is $20.00 per hour for Period 1 and $15.00 per hour for Period 2. It follows that for each hour worked

in excess of 40 hours per week, Plaintiff was entitled to $30.00 per hour in overtime pay for Period 1 ($20.00 x 1.5) and $22.50 per hour for Period 2 ($15.00 x 1.5).

During Period 1, Plaintiff claims he worked six days per week — from 9:00 a.m. to 4:00 p.m. on Tuesdays and Thursdays; 4:00 p.m. to 11:00 p.m. on Wednesdays; 7:00 a.m. to 4:00 p.m. on Fridays and Sundays; and 3:00 p.m. to 11:00 p.m. on Saturdays — for a total of 47 hours per week. (*Id.* ¶¶ 21–22.) Accordingly, Plaintiff is entitled to overtime wages for seven hours per week at $30.00 per hour, or $210.00 per week. During Period 2, Plaintiff claims he worked five days per week — from 3:00 p.m. to 11:00 p.m. on Wednesdays and Thursdays; 9:00 a.m. to 6:00 p.m. on Fridays; and 10:00 a.m. to 8:00 p.m. on Saturdays and Sundays — for a total of 45 hours per week. During this period, Plaintiff is entitled to overtime wages for five hours per week at $22.50 per hour, or $112.50 per week. As Period 1 lasted approximately 26 weeks and Period 2 lasted approximately 6 weeks, (*id.* ¶¶ 21, 25), the Court finds that Plaintiff is entitled to overtime damages totaling $6,135.00 (($210.00 x 26) + ($112.50 x 6) = $6,135.00).

2. *New York Wage Theft Protection Act Violations*

Plaintiff further requests a default judgment with respect to Defendants' alleged violations of the NYLL's wage notice and statement requirements, which were codified as part of the New York Wage Theft Prevention Act. *See* NYLL §§ 195, 195-3. Under these provisions, an employer must provide its employees:

> (1) a notice at the time of hiring "in writing in English and in the language identified by each employee as the primary language of such employee" containing specific information, including, *inter alia*, the rate of pay and basis thereof, the method of payment, allowances claimed as part of the minimum wage, the regular pay day, and the identity of the employer; and (2) statements with every payment of wages listing specific information, including, *inter alia*, the dates of work covered by that payment of wages, the name, address and phone number of employer, rate of pay and basis thereof, gross wages, deductions, any allowances claimed as part of the minimum wage, and net wage.

16

*Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020) (footnote omitted) (quoting NYLL § 195(1), (3)). An employer who fails to provide the required notices and statements is liable for statutory damages. *See* NYLL § 198(1-b), (1-d).

Although Plaintiff alleges that Defendants failed to provide the required wage notices and statements, he fails to plead facts showing that he has Article III standing with respect to these claims. Accordingly, Plaintiff has failed to establish that there is federal jurisdiction to enter a default judgment as to Plaintiff's wage notice and statement claims, and the Court recommends that these claims be dismissed without prejudice.

"The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). These requirements are "an indispensable part of [a] plaintiff's case" and must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the default judgment stage, as at the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennesssy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063 (KAM) (RML), 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

Importantly, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). This includes any state

17

law claim filed in federal court pursuant to the court's supplemental jurisdiction. In other words, the court cannot "exercise supplemental jurisdiction over a [state law] claim that does not itself satisfy [the] elements of the Article III inquiry." *Id.* at 335; *see Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12-CV-6154 (DLC), 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013) ("The fact that the claims arise from a common set of facts does not relieve the plaintiff of its obligation to demonstrate constitutional standing to sue for each one."); *see also Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 264–67 (E.D.N.Y. 2022) (concluding that NYLL § 195 creates distinct causes of action for wage notice and statement claims, that Article III standing is required for each, and that the court lacked subject matter jurisdiction over the claims).

The Supreme Court has also "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original). Without a concrete injury fairly traceable to the alleged statutory violation, a plaintiff lacks Article III standing, and, in turn, the district court cannot enter a default judgment with respect to the corresponding statutory cause of action. *See, e.g.*, *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

In this case, although Plaintiff alleges that Defendants failed to provide him with required wage notices and wage statements, he has not articulated any cognizable actual injury resulting from this failure. (Compl., ECF No. 1, ¶¶ 63–65, 67–69.) Absent any allegation of facts supporting Plaintiff's assertion of harm, or how his harm was

18

fairly traceable to Defendants' failure to provide wage notices and statements, Plaintiff has failed to plead "facts that affirmatively and plausibly suggest that [he] has standing" with respect to his wage notice and statement claims. *Hennessy*, 2022 WL 4095557, at *2 (quotation marks omitted); *see Soule ex rel. Stanescu v. Conn. Assoc. of Schs., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) ("[C]ourts 'need not credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (framing the plausibility standard as whether the plaintiff's allegations have "nudged their claims across the line from conceivable to plausible").

Plaintiff argues against this conclusion, positing that "[c]ourts have previously held the deprivation of wage statements 'entails a significant risk of harm to the employees' concrete interest in being properly paid.'" (Suppl. Submission, ECF No. 31, at 1 (quoting *Imbarrato*, 2020 WL 1330744, at *9)[6].) Plaintiff also directs the Court to a number of cases in the Eastern District of New York where courts have awarded statutory damages for NYLL wage notice and statement claims without squarely addressing the plaintiffs' standing. (Suppl. Submission, ECF No. 31, at 1.) While most of these cases were decided after *TransUnion*, they do not discuss *TransUnion* and determine that it does not apply to wage notice and statement claims; rather, they

---

[6] Although it was well reasoned under prevailing legal standards at the time, *Imbarrato* can no longer support the proposition that an employee has Article III standing to obtain statutory damages based solely on allegations that an employer failed to provide the wage notices and statements required by the NYLL. *See Veintimilla v. Sunny Builders NY*, No. 22-CV-1446 (LDH) (TAM), 2023 WL 2969385, at *11–12 (E.D.N.Y. Feb. 17, 2023) (discussing *Imbarrato*, 2020 WL 1330744). Specifically, the *Imbarrato* court relied upon the "material risk" standard discussed in *Strubel v. Comenity Bank*, which the Supreme Court later rejected. *See Imbarrato*, 2020 WL 1330744 at *7–9 & 8 n.7 (discussing *Strubel*, 842 F.3d 181 (2d Cir. 2016)); *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("In [its *TransUnion* holding], the [Supreme] Court rejected the standard we articulated in *Strubel v. Comenity Bank*.").

simply do not discuss standing post-*TransUnion*.[7] Notwithstanding recent Eastern District of New York decisions awarding damages for wage notice and statement claims, the Court must "abide by the legal decisions of higher courts," including the Supreme Court's teachings in *TransUnion*. *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 337 (E.D.N.Y. 2019).

Plaintiff notably misconstrues the undersigned Magistrate Judge's prior decisions as holding that "under *TransUnion*, employees do not have Article III Standing to bring NYLL notice violation claims." (Suppl. Submission, ECF No. 31, at 1 (quoting *Veintimilla*, 2023 WL 2969385, at *11–12).) In *Veintimilla*, this Court expressly noted that its holding did *not* conclude "that a plaintiff could never have standing to seek statutory damages under the NYLL's wage notice and statement provisions," but rather that *in that case* the plaintiff's pleading did not establish Article III standing. 2023 WL 2969385, at *12 n.10. Indeed, the Court discussed possible scenarios that may be sufficient to establish a factual basis for standing, such as where a plaintiff has alleged that the lack of provision of wage statements resulted in the underpayment of wages, where exposure to harm causes a separate concrete harm, and where a plaintiff has alleged "downstream consequences" from a "defendant's failure to provide information required by statute." *Id.* (quotation marks omitted).

---

[7] *See Imbarrato*, 2020 WL 1330744, at *9 (decided before *TransUnion*); *Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-CV-6455 (EAW), 2018 WL 2440732 (W.D.N.Y. Mar. 13, 2018) (same); *Black v. 7714 Ent. Corp.*, No. 21-CV-4829 (MKB) (TAM), 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022) (no discussion of standing or *TransUnion*); *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022) (same); *Santos v. Cancun & Cancun Corp. et al.*, No. 21-CV-192 (LDH) (RER), 2022 WL 1003812 (E.D.N.Y. Feb. 17, 2022) (same); *Lamar v. A&O Brothers Corp.*, No. 21-CV-169 (RPK) (CLP), 2022 WL 1422439 (E.D.N.Y. Feb. 2, 2022) (same); *Williams v. Miracle Mile Props. 2 LLC*, No. 20-CV-3127 (JS) (ARL), 2022 WL 1003854 (E.D.N.Y. Feb. 1, 2022) (same).

As applied to the NYLL context, the analysis of *TransUnion* suggests that employees must allege specific facts showing that they actually suffered a concrete injury fairly traceable to their employer's failure to provide the required notices and statements. *See Hennesssy*, 2022 WL 4095557, at *2 (explaining that, "[a]t the default judgment stage," the plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing" (quotation marks omitted)). In this case, Plaintiff merely alleges that Defendants did not provide the statutorily required notices, (Compl. ¶¶ 33, 36–37, 63–69), but Plaintiff does not state any facts that plausibly allege how the failure to provide the required notices resulted in a concrete injury.

Finally, Plaintiff cites a recently-issued Report and Recommendation addressing *TransUnion* and the divide among courts within the Eastern District as to the application of *TransUnion* to wage notice and statement claims. (Suppl. Submission, ECF No. 31, at 2 (quoting *Lin v. Bund Dumpling House Inc.*, No. 22-CV-6989 (EK) (RML), 2023 WL 7688886 (E.D.N.Y. Sept. 26, 2023)).)[8] In *Lin*, the court determined that the "concrete harm necessary for Article III standing is captured in the legislative purpose of the [Wage Theft Prevention Act], which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them — namely, through the provision of written notices with respect to employers' legal obligations — to advocate for themselves." *Id.* at *7.

---

[8] A court in the Southern District of New York also found, in the context of the Wage Theft Prevention Act, that although the complaint was "unspecific as to the downstream injuries that resulted from these alleged statutory violations, such allegations are not necessary to supply standing, and plaintiffs have standing to assert these claims" without discussion of *TransUnion*. *Bueno v. Buzinover*, No. 22-CV-2216 (PAE) (KHP), 2023 WL 2387113, at *2 (S.D.N.Y. Mar. 7, 2023).

The *Lin* court then discussed the factually distinct nature of the allegations in *TransUnion* and the challenges faced by individuals who do not receive correct information from their employers regarding their hours and wages. This Court entirely agrees with the *Lin* court that the Wage Theft Prevention Act claims alleged here "are of a different class of harm from those alleged in *TransUnion*" because the "[Wage Theft Prevention Act] was enacted to protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Id.* at *8 (quotation marks omitted).[9] Where the Court's analysis diverges from the reasoning of *Lin* is on the question of whether judicial recognition of a statute's purpose can substitute for factual allegations in the

_____

[9] In *TransUnion*, over 8,000 individuals sued TransUnion for violations of the Fair Credit Reporting Act ("FCRA"). *TransUnion*, 141 S. Ct. at 2200. There were two categories of alleged violations — (1) claims "that TransUnion failed to use reasonable procedures to ensure the accuracy of [plaintiffs'] credit files"; and (2) "complain[ts] about formatting defects in certain mailings sent to [the plaintiffs] by TransUnion." *Id.* The analysis in *Lin* focused on the first category of allegations and distinguished *TransUnion*, observing that the "factual circumstances arising out of cases like *TransUnion* . . . versus those arising in cases under the [Wage Theft Prevention Act] are fundamentally distinct." 2023 WL 7688886, at *7. However, the *Lin* opinion does not address the arguable similarities between Plaintiff's wage notice and statement claims, *see id.*, at *6–8, which are cursorily alleged in this case, and the second category of claims at issue in *TransUnion*, related to incorrect formatting of required disclosures and summaries in mailings, as to which the Supreme Court rejected Plaintiffs' standing argument. *TransUnion*, 141 S. Ct. at 2213. Specifically, the *TransUnion* plaintiffs "contend[ed] that the TransUnion mailings were formatted incorrectly and deprived them of the *right to receive information in the format required by the statute*." *Id.* (emphasis added).  The Supreme Court held that these plaintiffs "d[id] not demonstrate that they suffered any harm *at all* from the formatting violations[, and that they] presented no evidence that, other than [the named Plaintiff], a single other class member so much as *opened* the dual mailings, nor that they were confused, distressed, or relied on the information in any way." *Id.* (emphasis in original) (quotation marks omitted). Similarly, the Wage Theft Prevention Act creates a right for employees to receive specific information, and although the failure to receive that information could cause a concrete injury — by, for example, creating confusion or the inability to understand if the employee is being compensated correctly — in this case, Plaintiff did not allege any harm *at all* from the nonreceipt of the required wage statements and notices. (*See generally* Compl., ECF No. 1.)

pleadings in evaluating whether Plaintiff has alleged Article III standing.[10] A partial answer to this question may be gleaned from the Supreme Court's observation in *TransUnion* that "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 141 S. Ct. at 2214 (quotation marks omitted); *see id.* at 2213 (discussing how plaintiffs had failed to establish Article III standing with respect to their disclosure claim, which alleged certain deficiencies in TransUnion's mailings, in the absence of evidence that they "would have tried to correct their credit files" "had they been sent the information in the proper format"); *see also Sevilla*, 2022 WL 954740, at *7 (discussing how statutory violations "that do not lead to either a tangible injury or something akin to a traditional cause of action cannot sustain Article III standing in federal court" (quotation marks omitted)).

Accordingly, the Court concludes that, after *TransUnion*, when evaluating claims of informational injury, the Court should not substitute its understanding of possible harms sought to be addressed by a statute for facts alleged in the pleadings. Here, Plaintiff has failed to allege any facts about injuries that flowed from Defendants' alleged Wage Theft Prevention Act violation; he only alleges that he was not provided wage notices and wage statements, and that such failure violated the law. (Compl., ECF No. 1, ¶¶ 35–37; 62–69.) In this case, did the failure to provide wage notices and wage statements in fact deprive Plaintiff of information that would have helped him to understand how his wages were calculated, denying him the opportunity to identify the

---

[10] While Plaintiff cites a footnote from *Lin* suggesting that "the Supreme Court's recent decision in *303 Creative v. Elenis* appears to lower the bar for plaintiffs to establish Article III standing," 2023 WL 7688886, at *7 n.3 (citing *303 Creative v. Elenis*, 143 S. Ct. 2298, 2308 (2023)), the legal standards for evaluating standing in a pre-enforcement challenge, as applied in *303 Creative*, are distinct and inapposite to this case.

wage deficiency earlier? Did this prevent efforts he would have taken to correct the deficiency? What harms actually flowed from not having the information? These are questions that can readily be, and should be, alleged in the pleadings; the factual predicate underlying a specific plaintiff's claims should not assumed by a court based on the statutory scheme.

In finding that there is a pleading deficiency here, the Court is *not* reaching the conclusion, or even suggesting, that failure to provide wage notices and wage statements is always going to be a "purely technical" violation of the Wage Theft Prevention Act that cannot be properly pleaded in federal court. *See Lin*, 2023 WL 7688886, at *8 (discussing technical violations). Rather, the Court finds that *as presently alleged in this case*, Plaintiff has failed to state facts sufficient to ascertain that there was a concrete injury cognizable under Article III *as to Plaintiff Lopez* so as to sustain his Wage Theft Prevention Act claims. Therefore, the Court respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims without prejudice, for lack of Article III jurisdiction. *See, e.g.*, *Neor v. Acacia Network, Inc.*, No. 22-CV-4814 (ER), 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023); *Sevilla*, 2022 WL 954740, at *7; *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417 (JLS) (MJR), 2022 WL 5039391, at *7–9 (W.D.N.Y. Sept. 29, 2022); *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 339–341 (S.D.N.Y. 2022).

\*     \*     \*     \*     \*

In summary, the Court respectfully recommends that Plaintiff's wage notice and statement claims be dismissed without prejudice,[11] and that as to Plaintiff's other claims, he be awarded **$6,135.00** in compensatory damages for unpaid overtime pay.

## D. Liquidated Damages and Interest

### 1. *Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee is also entitled to recover liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."). Because plaintiffs

---

[11] Plaintiff's memorandum requests that the Court "adhere to Second Circuit precedent and not make arguments for the defaulting party." (Suppl. Submission, ECF No. 31, at 3 (citing *Taylor v. 312 Grand St. LLC*, No. 15-CV-5410 (BMC), 2016 WL 1122027, at *9 (E.D.N.Y. Mar. 22, 2016)).) Again, Plaintiff appears to misapprehend the Court's duty to follow the law and what the Court must consider in the default context. As an initial matter, the Court notes that entry of a default judgment is only warranted when a plaintiff has "demonstrate[d] that the allegations set forth in the complaint state valid claims." *United States v. McDermott*, No. 12-CV-4440 (DRH) (AKT), 2014 WL 1272566, at *4 (E.D.N.Y. Feb. 14, 2014). "[A] defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2020). Moreover, it is beyond cavil that "[w]hether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir. 1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Accordingly, it is appropriate for a district court to "raise the issue of standing *sua sponte*." *In re Indu Craft, Inc.*, 630 Fed. App'x 27, 28 (2d Cir. 2015) (citing *United States v. Hays*, 515 U.S. 737, 742 (1995)). While Plaintiff attempts to argue that "Defendants gave up the right to argue a lack of Article III standing when they elected to default in this action," (Suppl. Submission, ECF No. 31, at 3), "'[t]he question of standing is not subject to waiver,'" *Lebron v. Nat'l R.R. Passenger Corp.*, 69 F.3d 650, 659 (2d Cir. 1995) (alteration in original) (quoting *Hays*, 515 U.S. at 742).

cannot obtain a double recovery, courts award liquidated damages for unpaid wages under *either* the FLSA or the NYLL, whichever provides for a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."); *see, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Under these provisions, the Court recommends an award of liquidated damages equivalent to Plaintiff's compensatory damages under the NYLL, i.e., **$6,135.00**.

      2.  *Prejudgment Interest*

As to Plaintiff's request for prejudgment interest, "[i]t is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015); *see also Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum,* 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012), *report and*

26

*recommendation adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose").

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum*, 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013). Here, since Plaintiff is entitled to an equivalent award of compensatory overtime damages under either the NYLL or the FLSA, the Court finds that Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Market Corp.*, No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018), *report and recommendation adopted*, Mar. 31, 2019 ECF Order Adopting R. & R. (citing *Fermin*, 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, from "[the] midpoint date . . . through the date judgment is entered." *See Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013).

Here, given that the relevant dates of Plaintiff's employment are May 30, 2022, to January 8, 2023, (Compl., ECF No. 1, ¶ 19), the midpoint of Plaintiff's employment by Defendant was approximately September 18, 2022. Accordingly, the Court recommends that prejudgment interest be awarded under the NYLL on Plaintiff's compensatory damages award of $6,135.00, from September 18, 2022, to the date judgment is entered at a per diem interest rate of **$1.51** ($6,135.00 × 0.09 / 365).

### 3. *Post-Judgment Interest*

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (alteration in original). In *Fermin*, the court awarded post-judgment interest on all sums awarded pursuant to the plaintiffs' FLSA and NYLL wage-and-hour claims. 93 F. Supp. 3d at 53. The same approach is appropriate here. The Court therefore respectfully recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

### E. Attorneys' Fees and Costs

The FLSA and NYLL allow for prevailing plaintiffs to recover reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL § 663. Plaintiff requests $2,770.50 in

attorneys' fees[12] (Suppl. Submission, ECF No. 31, at 4) and $512.00 in costs, (Pl.'s Mem. of Law, ECF No. 19, at 15). Courts "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation marks and citation omitted).

1. *Attorneys' Fees*

The Court has "broad discretion to determine the amount of attorneys' fees awarded." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2815742, at *18 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted*, 2023 WL 2583856 (E.D.N.Y. Mar. 21, 2023). In the Second Circuit, district courts may use the lodestar to determine a "presumptively reasonable fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation omitted). Courts calculating the lodestar multiply "the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate." *Rotthoff v. N.Y. State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *3 (E.D.N.Y. Apr. 8, 2021).

In determining a reasonable number of hours, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts "must make 'a conscientious and detailed inquiry into the validity of the representations that a certain

---

[12] The Court notes that there is a discrepancy in the amount of fees requested between Plaintiff's memorandum of law in support of the motion for default judgment, (Pl.'s Mem. of Law, ECF No. 19, at 15), and the Supplemental Submission, (Suppl. Submission, ECF No. 31, at 4). Because the Supplemental Submission was more recently filed, the Court will assess the fees requested in that filing.

number of hours were usefully and reasonably expended.'" *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862 (RJD) (RML), 2021 WL 1413246, at *11 (E.D.N.Y. Mar. 10, 2021) (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012)).

Mr. Aronauer submitted billing records reflecting a total of 12.67 hours worked — 9.77 hours by support staff and 2.9 hours by Mr. Aronauer. (Suppl. Submission Ex. C, ECF No. 31-1, at ECF pp. 12–15.) Based on the submitted records, the Court finds that the total number of hours expended is reasonable.

Courts in this circuit determine a reasonable hourly rate "us[ing] the prevailing hourly rates in the district in which they sit." *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021). In FLSA cases, "[r]ecent decisions within the Eastern District of New York approved hourly rates of $300 to $450 for partners, $200 to $300 for senior associates, and $100-$200 for junior associates, and $70 to $100 for support staff." *Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (LB), 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021) (collecting cases), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*, 2021 WL 1946322 (E.D.N.Y. May 15, 2021). Here, Plaintiff's attorney, Jacob Aronauer, uses an hourly rate of $450 for his work and $150 for support staff. (Suppl. Submission, ECF No. 31, at 4.) Mr. Aronauer is the principal of the Law Offices of Jacob Aronauer. (Decl. of Jacob Aronauer, ECF No. 21, at ¶ 1.) He graduated from law school in 2005 and founded his firm in 2013. (*Id.* ¶ 23.) Mr. Aronauer notes that paralegals write the first drafts of documents to minimize fees. (*Id.* ¶ 20.)

The Court notes that Mr. Aronauer's requested rates both for his work and his support staff are high — especially for the Eastern District of New York, but also for the Southern District of New York. *Compare Ramirez v. Roka Japanese Food, Inc.*, No. 18-CV-

296 (ST), 2019 WL 2372866, at *9 (E.D.N.Y. June 5, 2019) (awarding hourly rates of $300 for Mr. Aronauer and $75 for paralegal work), *vacated in part on other grounds sub nom. Ramirez v. Lin*, 830 Fed. App'x 672 (2d Cir. 2020), *with Leon v. AYG Framing Constr. LLC*, No. 21-CV-8014 (VSB) (SDA), 2022 WL 6241252, at *5–6 (S.D.N.Y. Aug. 21, 2022) (awarding hourly rates of $415 for Mr. Aronauer and $165 for paralegal work). Although the requested hourly rate for Mr. Aronauer is somewhat higher than that previously awarded to him, and the requested rate for paralegal work is outside of the typical range for support staff, the Court recognizes that Mr. Aronauer's approach of delegating routine drafting tasks to paralegals results in an overall reduction in the total fees requested. Accordingly, while the Court does not conclude that the hourly rates requested are reasonable, the Court concludes that the overall fee requested in this case is reasonable in light of the amount of work performed and the outcome achieved. *See Muratov v. Mama Shnitzel, Inc.*, No. 22-CV-3785 (HG) (TAM), 2023 WL 5152511, at *12 (E.D.N.Y. July 21, 2023), *report and recommendation adopted*, Aug. 29, 2023 ECF Order Adopting R. & R. (approving a fee of $4,712.50 in a FLSA default case); *Fermin*, 93 F. Supp. 3d 19, 52 (approving a fee of $7,700.00 in a FLSA default case).

For all these reasons, the Court concludes that awarding Mr. Aronauer $2,770.50 in fees is reasonable and recommends that his fee request be granted.

2. *Costs*

Plaintiff seeks $512.00 in costs. (Pl.'s Mem. of Law, ECF No. 19, at 15.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotation marks omitted), *report and recommendation adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018). Plaintiff seeks to recover $402.00 for the complaint filing fee and $110.00 for service costs. (Pl.'s Mem. of

Law, ECF No. 19, at 15.) Mr. Aronauer submitted documentation supporting the filing fee and documentation supporting $115.00 in service fees. (Decl. of Jacob Aronauer Ex. D, ECF No. 21, at ECF p. 18–19 (reflecting a $50 service fee for service on Defendant Simon); Suppl. Submission Ex. A, ECF No. 31-1, at ECF pp. 2 (reflecting a $65 service fee for service on Corporate Defendant).) The Court recommends that Plaintiff be awarded costs of $517.00 based on the submitted invoices, which document an amount slightly higher than the $512 requested by counsel.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims without prejudice. With respect to Plaintiff's remaining claims, the Court recommends finding that entry of default is warranted and that, under the default judgment standard, Plaintiff has established that Defendants violated the FLSA and NYLL.

Accordingly, the Court respectfully recommends that Plaintiff's motion be granted in part and that a default judgment be entered against Defendants Francisco Simon and Martha's Cocina Mexicana, LLC. With respect to damages, the Court recommends that Plaintiff be awarded a sum of **$12,270.00**, comprised of **$6,135.00** in compensatory damages and **$6,135.00** in liquidated damages. The Court recommends that Plaintiff be awarded **$2,770.50** in attorneys' fees and **$517.00** in costs. The Court further recommends (1) an award of prejudgment interest on Plaintiff's unpaid overtime wages at a per diem interest rate of **$1.51** from September 18, 2022, to the date final judgment is entered; and (2) an award of post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in damages under the NYLL, not including post-judgment

interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[13]

*    *    *    *    *

This report and recommendation will be filed electronically and a copy sent by mail to Defendants Francisco Simon and Martha's Cocina Mexicana, LLC. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by **January 2, 2024**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable LaShann DeArcy Hall at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the

---

[13] The New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See Rodriguez*, 2018 WL 7252949, at *12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL). Although Plaintiff did not request this provision in his motion for default judgment or the Supplemental Submission, the statutory language provides that any judgment or court order "shall provide" for this automatic fifteen percent increase. NYLL § 198(4). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at *7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

> **SO ORDERED.**

Dated:  Brooklyn, New York
        December 27, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE